## Frey's Estate

*Schmidt, Keesey, Stair* and *Kurtz,* for petitioner.
*George Hay Kain,* contra.

NILES, P. J., May 31, 1935.—The York Trust Company holds a fund received from the distribution of the estate of Ethan A. Frey in trust for Mary E. Willis, a daughter of Ethan A. Frey. The provisions of the will applicable to the present situation as to the daughter's share are:

"(b) Upon the death of my said wife, or her remarriage, whichever shall happen first, I give, devise and bequeath the unconsumed and unexpended portion of my estate, share and share alike, as follows:

"If my wife should remarry, then one-third of my estate shall be paid to her absolutely, and one-third of my estate shall be paid to my son, Ralph E. Frey, abso-

lutely, and the remaining one-third shall be paid to my daughter, Mary E. Willis, absolutely, if she at that time is a widow, but if her husband, William J. Willis, is then living, then the one-third of my estate shall be held by York Trust Company in trust for the use of my daughter, Mary E. Willis, upon the following uses and trusts, namely: to pay to my daughter, Mary E. Willis, all of the interest, income and revenue of said portion of my estate during the period of her natural life, provided, however, that if my daughter, Mary E. Willis, shall become a widow, that in that event the said trustee shall pay to her said share of my estate absolutely."

The widow elected to take against the will, and the shares of the two children were adjudicated accordingly. When this trust took effect Mary E. Willis was not a widow, her husband, William J. Willis, being then living, and in accordance with the terms of the will the trust company held the fund, paying the income to the daughter. By a decree of the Court of Common Pleas of York County on January 28, 1935, no. 112, August term, 1934, the daughter, Mary E. Willis, was divorced from her husband, William J. Willis. She now presents her petition filed May 27, 1935, for a decree that the trust created for her benefit by the provisions of the will of her father has terminated, and that the trustee be directed to pay the trust fund to her. She is entitled to such a decree if she has "become a widow."

The first question presented is: Did the decree of divorce make her a widow within the meaning of her father's will. We conclude that it did. The testator's intent must be arrived at by interpreting the words of his will. We think it clear from an examination of the whole document that the dominant thought of testator was to protect the share of his daughter during coverture. The case is similar to Koenig's Appeal, 57 Pa. 352. In that case, as in this, the daughter's share was to be paid to her absolutely if and when she is a widow. The purpose of the trust was to protect the wife's estate against her

husband. That purpose was fully accomplished when coverture ceased, as it did upon the decree of divorce. The divorce terminated all possibility of the husband interfering with the wife or her property as completely as death would have done. As was said in the opinion of Judge Strong, in Koenig's Appeal, "then why should the trust be continued after its exigencies have been met? It matters not what may be the nominal duration of an estate given by will to a trustee. It continues in equity no longer than the thing sought to be secured by the trust demands." This same reasoning is followed in Lee's Estate, 207 Pa. 218. There the share of a daughter was to be held by the trustee during her life, but "in the event of the death of the present husband of my said daughter, viz: Jacob E. Blackmore before his said wife, then in such event said trust shall cease and determine, and the estate herein devised to said trustees shall vest in my said daughter Annie E. Blackmore absolutely." The Supreme Court in a per curiam opinion said: "The will of testator placed the bequest to his daughter in trust for her, the trust to end in the event of the husband's death before hers; that event did not occur, but the marriage relation was dissolved by a decree in divorce. Evidently, the sole purpose of the trust was to protect her estate from the husband Jacob E. Blackmore; the law has severed the matrimonial bond as effectually as death could have done; therefore, the sole purpose of the trust being at an end, the daughter is entitled to the estate. So the court below on the authority of Koenig's Appeal, 57 Pa. 352, rightly decided."

In opposition to the petition it is objected that the will before us is similar to that before the Supreme Court in Henry's Estate, 271 Pa. 416. With some hesitation we conclude that the words of this Frey will warrant our following the Koenig and Lee cases rather than Henry's Estate. The provision of the Henry will for the termination of the trust for the daughter was: "and should my said daughter Ida become widowed through the death of

her present husband, namely, D. Roy Caldwell, then the amount held in trust for her shall be paid over to her in cash as soon as can conveniently be done for her to use as she sees fit." It appears that the daughter was divorced by a decree of the Circuit Court of the Territory of Hawaii from her husband, who was still living. While the decision did not rest upon the validity of the Hawaii divorce, a suspicion is suggested in the opinion that such a trust during coverture might be evaded by a pre-arranged divorce whereby the daughter and husband could get possession of the money, remarry, and thus set the terms of the will aside. That the purpose of the testator may have been to prevent such an evasion the peculiar words used were sufficient to distinguish the case from former decisions. The words used by Mr. Henry regarding termination of the trust were: "Should my said daughter Ida become widowed through the death of her present husband, namely, D. Roy Caldwell."

There is nothing in the case before us upon which to base any such pretended precaution. We are impressed by the reasoning of a case cited: Rittenhouse v. Hicks et al., 10 Ohio Decisions Reprint, 759, in which it was said by Judge Buchwalter: "This was an action to declare a trust terminated, which had been created by the will of plaintiff's mother. By that will one-third of the testatrix's property was given to Hicks in trust for plaintiff, she to receive the income during her natural life, and after her death the trust to end, and the property to belong to plaintiff's children. At the time the will was executed plaintiff had a husband whose habits were dissipated. The will further provided that if plaintiff 'should become a widow' the trust should thereupon likewise end, and the property to be turned over to her as her own absolutely. After the death of the testatrix, the plaintiff procured a divorce from her husband because of his habitual drunkenness. She claimed that being divorced from him she was a widow within the sense in which the

testatrix intended the word to be understood, namely, 'husbandless.'

"The court said that, while technically the word widow means a woman whose husband has died while she was still married to him, yet, as in construing wills, the courts will always disregard the technical meaning of a word in the face of a plain intention on the part of a testator to use the word in a different and more liberal sense. The question here presented is whether this testatrix meant the word widow to be understood in its technical sense or not. From a careful consideration of the whole context of the will, as well as the evidence furnished by the circumstances which surrounded the testatrix at the time of its execution, it is certain that the only object of the creation of the trust was to keep this property from the control of this particular husband, and that the testatrix used the word widow simply as a term designating a husbandless condition; wherefore the divorce having had the effect of severing the daughter's married relation with this husband and of putting her property as completely beyond his control as his death would have done, the conclusion, the court thought, was inevitable that the event named for terminating the trust occurred by the granting of the divorce. Authority for this conclusion is found in numerous cases where the word 'unmarried,' which technically means 'never having been married,' has been decided to mean 'wifeless' as coming within the testator's intention.

"Judgment declaring the trust terminated."

This decision is persuasive and is consistent with the Pennsylvania cases cited.

And now, May 31, 1935, the prayer of the petition of Mary E. Willis is granted; and it is decreed that the provisions of the will of Ethan A. Frey, deceased, have been terminated; and the York Trust Company is directed to pay to said Mary E. Willis her share of the estate of said Ethan A. Frey now held by it in trust under the provisions of his will.